IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Criminal No.  4:23-cr-126 |
| | ) | |
| DARNELL KEITH JONES, | ) | UNITED STATES' |
| | ) | TRIAL BRIEF |
| Defendant. | ) | |
| | ) | |

COMES NOW, the United States of America, by and through its undersigned counsel, and submits this Trial Brief.

## TABLE OF CONTENTS

I.    STATUS OF THE CASE ...................................................................... 2

II.   BACKGROUND ................................................................................. 3

III.  ANTICIPATED TYPES OF EVIDENCE ....................................... 4

    A.   Witness testimony ..................................................................... 4

    B.   Audio and video recordings ...................................................... 7

    C.   Business records ........................................................................ 8

    D.   Data extracted from Defendant's cellphones and from
        Minor Victim #1 (J.C.)'s cellphone ...................................... 8

    E.   Summary exhibits and pedagogical exhibits .............................. 9

IV.   OTHER FORESEEABLE MATTERS ........................................... 10

    A.   Defendant's statements are admissible *only if* offered
        by the United States ............................................................... 10

    B.   A witness's prior statements to the grand jury may be admitted
        as substantive evidence ........................................................... 12

    C.   References to victims' names and exhibits with personal information ........ 14

    D.   There are no forfeiture matters for this Court to resolve ............................. 15

# I.   STATUS OF THE CASE

A. Defendant has elected to proceed to trial. Trial by jury has not been waived. A jury trial is currently set for Monday, May 6, 2024, at 9:00 a.m. before the Honorable Rebecca Goodgame Ebinger.

B. The government currently estimates that, with jury selection, its case in chief will take three or four days.

C. As of the date of this filing, Defendant has not accepted the United States' plea offer. The United States requests that before commencement of the trial, this Court confirm with Defendant that he is/was aware of the previously communicated plea offer and that he chose to decline said offer. *See Lafler v. Cooper*, 566 U.S. 156 (2012).

D. Defendant is in custody and has been since August 2023.

E. At trial, the United States will be represented by Assistant United States Attorneys Kyle J. Essley and Laura M. Roan. Paralegal Specialist Alisha Rankin will assist with technology needs.

F. The United States expects to call approximately sixteen witnesses to testify at trial. One witness (C.L.) will be a minor at the time of trial, and five witnesses (N.A., M.B., J.C., C.L., and J.Z.) are victims of Defendant's criminal conduct.

G. The United States requests that this Court instruct witnesses for both parties to comply with Federal Rule of Evidence 615, but that Investigator Aaron McConnell of the Wapello County Sheriff's Office and Investigator Jeremy Tosh of the Ottumwa Police Department be allowed to sit at counsel table as case agents.

H. The United States is not aware of any discovery issues and believes it has complied with its discovery obligations. The United States will continue to adhere to its duty to disclose under Federal Rule of Criminal Procedure 16, *Brady v. Maryland*, 373 U.S. 83 (1963) and its progeny, and the Jencks Act and Federal Rule of Criminal Procedure 26.2.

I. Defendant has not given the United States notice of any affirmative defense, provided the United States with discovery, or disclosed any expert witnesses. (*See* Dkt. 24 (discovery order in which Defendant acknowledged government's request for these materials)).

J. The United States intends to offer one expert witness, Supervisory Special Agent James E. Hardie of the Federal Bureau of Investigation's Critical Incident Response Group, National Center for the Analysis of Violent Crime,

Behavioral Analysis Unit. Hardie will testify as an expert in sex trafficking, and his testimony will be consistent with the Expert Disclosure the United States provided to Defendant's attorneys on February 2, 2024, and with any supplemental disclosures provided to Defendant's attorneys between today's date and the date of trial.

## II.    BACKGROUND

The facts of this case have been detailed in the United States' Consolidated Motions *In Limine*, which were filed simultaneously with the filing of this Trial Brief.

Trial is currently scheduled to begin Monday, May 6, 2024. At trial, Defendant faces six charges arising out of a Superseding Indictment issued on October 18, 2023. (Dkt. 33). Defendant is charged with:

- Count 1, Sex Trafficking of Minor Victim #1 (J.C.) by Force, Fraud, and Coercion;

- Count 2, Sex Trafficking of a Child, Minor Victim #1 (J.C.);

- Count 3, Enticement and Attempted Enticement of Minor Victim #1 (J.C.);

- Count 4, Enticement and Attempted Enticement of Minor Victim #2 (C.L.);

- Count 5, Sex Trafficking of Victim #1 (M.B.) by Force, Fraud, and Coercion; and

- Count 6, Travel Act – Facilitate Prostitution.

(Dkt. 33).

## III.   ANTICIPATED TYPES OF EVIDENCE

### A.   Witness testimony

The government intends to call approximately sixteen witnesses to testify at trial. A summary of the anticipated witness testimony follows. (**Note:** The following is not an all-inclusive list of matters that will be introduced through witness testimony at trial. The United States reserves its right to introduce testimony beyond the matters outlined below and from witnesses not listed below. For a more detailed recitation of the facts, please see the United States' Consolidated Motions *In Limine*.)

*Victims of Defendant's Conduct.* Defendant sex trafficked or attempted to sex traffic five witnesses who will testify at trial—Victim #1 (M.B.), Minor Victim #1 (J.C.), Minor Victim #2 (C.L.), N.A., and J.Z. J.C. and C.L. were minors during the period in which they interacted with Defendant, and C.L. will be a minor at the time of trial.

These five victims will testify about, among other things, their backgrounds; how they met Defendant; their interactions with Defendant, including Defendant abusing and/or sexually assaulting them; statements Defendant made during those interactions; Defendant's focus on "pimping" and getting the victims to perform commercial sex acts; how Defendant promoted, advertised, and arranged his commercial-sex pursuits; and how Defendant managed their time with him and the environment that created.

*Eye-witnesses to Defendant's Conduct.* Several witnesses at trial are civilians who observed Defendant abusing either Victim #1 (M.B.) or Minor Victim #1 (J.C.),

reported Defendant's conduct to law enforcement, observed injuries to one of the victims; and/or assisted M.B. or J.C. in some manner after witnessing Defendant abusing the victim.

*Law Enforcement Testimony.* This case is the culmination of several law enforcement investigations which occurred throughout the last several years. As a result, the government expects to elicit testimony from multiple law enforcement officers. Although it is not currently known which officers will testify and which topics each officer will discuss, the officers' testimony will include, but not be limited to, testimony concerning:

- From 2018 to summer 2023, law enforcement officers responded to calls for service regarding Defendant's conduct with victims. Many of these calls concerned Defendant physically assaulting a victim, and in response to those calls, officers (a) collected evidence, (b) heard statements made by the victims and/or Defendant, (c) charged Defendant with crimes, and/or (d) learned that Defendant was prohibited from having contact with victims. Several officers will testify about calls for service concerning Defendant to which they responded and/or their interactions with Defendant and/or the victims.

- In January 2020, officers executed warrants at Defendant's residence and discovered evidence indicating Defendant was involved in sex trafficking. Among other things, officers found lingerie, numerous books on "pimping" and like subjects, and handwritten notes relating to sex trafficking. Officers took custody of those materials. Following the execution of the warrants, Defendant contacted officers multiple times asking officers to return his property, including, specifically, the books. One or more officers will testify about these matters.

- As discussed elsewhere, investigators have collected as part of the investigations into Defendant, among other things: (i) business records from numerous companies; (ii) several items of electronic evidence, including digital extractions from cellphones seized from Defendant and Minor Victim #1 (J.C.), as well as text messages, videos, and other items victims have provided; (iii) communications Defendant had while incarcerated in county jails; and (iv) calls for law enforcement service from victims or civilians concerning

5

Defendant's conduct. Multiple officers will testify about these items and their connections to Defendant and his criminal conduct.

- More generally, officers will testify about: (i) the investigations of Defendant; (ii) criminal charges and no-contact orders issued concerning Defendant and victims; (iii) evidence collected from victims/witnesses and Defendant throughout the investigation; (iv) statements Defendant and victims/witnesses made to law enforcement officers and others; and (v) summaries of voluminous records or trial evidence.

*Expert Testimony*. The United States intends to present testimony from one expert witness, Supervisory Special Agent James E. Hardie of the Federal Bureau of Investigation. Special Agent Hardie has worked as an FBI special agent since 2001, and during his career, he has participated in at least 100 sex-trafficking investigations. In addition, he has interviewed numerous sex traffickers, victims, and commercial-sex buyers. He has provided presentations and training to law enforcement, government officials, and others about sex trafficking, and he has testified as a sex-trafficking expert on over twenty occasions in federal court. The United States offers Special Agent Hardie as an expert in sex trafficking generally. Topics to which he will testify include, but are not limited to, the logistics of the commercial sex industry, the common dynamics between a trafficker and victim, and the various types of traffickers and the methods by which traffickers recruit, control, and profit from their victims. He will also be asked to consider several exhibits which will be introduced at trial. His testimony will be consistent with the Expert Disclosure the United States provided to defense counsel on February 2, 2024.

### B.      Audio and video recordings

During the investigation, investigators have obtained several audio and video recordings of Defendant, including recordings found on Defendant's cellphone and social media accounts, recordings victims provided investigators, and recordings of telephone communications Defendant placed while incarcerated at the Polk County Jail and Wapello County Jail. In addition, investigators have recovered recordings of calls for law enforcement assistance. Said calls were placed by victims or civilians reporting events relevant to the conduct for which Defendant is charged. The United States plans to admit and publish several of these recordings to the jury at trial, either in whole or in part.

The United States has obtained transcripts of the foregoing audio and video recordings. The transcripts which have been created to date have been provided to defense counsel.

No stipulations regarding the recordings have been reached as of the date of this filing, but counsel have discussed whether Defendant intends to object to the recordings' authenticity and/or admissibility. In addition, as to the recordings of (a) Defendant's communications placed during his detention at the Polk County Jail and Wapello County Jail, and (b) the calls for law enforcement service, those records have been certified by appropriate representatives, thereby satisfying the foundational requirements in Federal Rule of Evidence 902(11), (13). In its Consolidated Motions *In Limine*, the government seeks a determination that these recordings are authentic and admissible without further foundation or testimony.

7

### C.    Business records

The government will introduce a substantial volume of documents as evidence in this case. That includes certified business records, including documents from social media companies, hotel chains, cellphone providers, internet-service providers, financial-service providers, and others. The admissibility of the business records is discussed in the government's Consolidated Motions *In Limine*. No stipulations regarding the business records have been reached as of the date of this filing, but counsel have discussed whether Defendant intends to object to the records' admissibility. Regardless, all the business records which the government will introduce have been certified by appropriate company representatives as satisfying the foundational requirements in Rule 902(11) and Rule 803(6). In its Consolidated Motions *In Limine*, the government seeks a determination that these records are admissible without further foundation or testimony.

### D.    Data extracted from Defendant's cellphones and from Minor Victim #1 (J.C.)'s cellphone

The government intends to offer several items of evidence obtained from digital extractions recovered from seized cellphones. In all, three cellphones were seized from Defendant, one in 2020, one in February 2023, and another in August 2023. A fourth cellphone was seized from Minor Victim #1 (J.C.) in February 2023. The authenticity of this evidence is discussed in the government's Consolidated Motions *In Limine*. Law enforcement officers who have received training in conducting digital extractions, and who have performed numerous such extractions previously, completed the digital extractions of the four cellphones. Those officers have executed

8

Case 4:23-cr-00126-RGE-HCA   Document 78   Filed 04/15/24   Page 9 of 15

certifications that satisfy the foundational requirements in Federal Rule of Evidence 902(14) with respect to the data recovered from the four cellphones. No stipulations regarding the evidence contained in the digital extractions have been reached as of the date of this filing, but counsel have discussed whether Defendant intends to object to the authenticity and/or admissibility of the evidence. In its Consolidated Motions *In Limine*, the government seeks a determination that the evidence collected from the cellphones is authentic without further foundation or testimony.

### E.     Summary exhibits and pedagogical exhibits

Pursuant to Rule 1006, the government intends to introduce several summaries of voluminous records. The admissibility of these summaries is discussed in the United States' Consolidated Motions *In Limine*.  The summaries will be used during the testimonies of victims and/or the investigators who created the summaries. The government will seek to admit the summaries as evidence; thus, the summaries will go with the jury during deliberation.

In addition, pursuant to Rule 611(a), the government will introduce pedagogical exhibits, summarizing evidence, primarily from other trial exhibits. The admissibility of these exhibits is discussed in the United States' Consolidated Motions *In Limine*. The exhibits will be marked for identification and used during witness examination and possibly closing argument.

## IV.    OTHER FORESEEABLE MATTERS

### A.    Defendant's statements are admissible *only if* offered by the United States

As stated above, at trial, the United States intends to offer audio and video recordings of Defendant's statements and text messages between Defendant and other individuals. Defendant may contend that his statements are hearsay. But Defendant's statements are not hearsay when offered by the United States, because they are Defendant's statements offered against him by his opposing party, in this case, the United States. Fed. R. Evid. 801(d)(2).

Defendant's statements in those communications would be inadmissible hearsay, though, if Defendant attempts to offer them at trial. No Federal Rule of Evidence exists which would permit Defendant to introduce his own out-of-court statements. *E.g.*, *United States v. Woody*, 336 F.R.D. 293, 362 (D.N.M. 2020) ("[Defendant's] out-of-court statements—when offered to prove the truth of their assertions—are hearsay when [defendant] offers them, and thus inadmissible, but they are not hearsay when the United States offers them." (citations omitted)).

Defendant may request that the "rule of completeness" in Federal Rule of Evidence 106 be used to play the entirety of the recordings or text messages offered against him. But those statements are hearsay when offered by Defendant, and Defendant may not circumvent the prohibition against hearsay by way of Rule 106. *Id.* at 362-63.

Moreover, Rule 106's purpose "is merely to make sure that a misleading impression created by taking matters out of context is corrected on the spot." *United*

*States v. LeFevour*, 798 F.2d 977, 981 (7th Cir. 1986); *Echo Acceptance Corp. v. Household Retail Servs., Inc.*, 267 F.3d 1068, 1089 (10th Cir. 2001). Said another way, the "rule of completeness" does not compel the admission of otherwise inadmissible hearsay; it is merely a remedy when a party offers a "misleadingly-tailored snippet" such that an inextricably intertwined statement may be offered to cure the misleading nature of the snippet. *United States v. Goxcon-Chagal*, No. CR 11-2002, 2012 WL 3249473, at *6-*7 (D.N.M. Aug. 4, 2012) (quotations omitted).

As a result, pursuant to Rule 106, Defendant may introduce additional parts of his communications (even hearsay statements, Fed. R. Evid. 106) but only those additional parts "that [are] relevant and [are] necessary to qualify, explain, or place into context the portion already introduced." *United States v. Pendas-Martinez*, 845 F.2d 938, 944 (11th Cir. 1988); *see also United States v. Branch*, 91 F.3d 699, 728 (5th Cir. 1996) ("Although different circuits have elaborated Rule 106's fairness standard in different ways, common to all is the requirement that the omitted portion be relevant and necessary to qualify, explain, or place into context the portion already introduced.") (quoting *Pendas-Martinez*, 845 F.2d at 944).

It is Defendant's burden to show that the statements offered against him are taken out of context and that additional statements should be admitted so as to "qualify, explain, or place into context the portion already introduced." *Branch*, 91 F.3d at 728; *see, e.g.*, Fed. R. Evid. 106; *United States v. Farrington*, 42 F.4th 895, 900-01 (8th Cir. 2022); *Echo Acceptance Corp.*, 267 F.3d at 1089. Thus, once the United States discloses those portions of Defendant's communications it intends to

11

offer at trial, Defendant should provide the United States, and this Court, with the additional statements Defendant believes "ought in fairness to be considered contemporaneously with" the United States' evidence. Fed. R. Evid. 106; *Farrington*, 42 F.4th at 901; *United States v. Aungie*, 4 F.4th 638, 646-47 (8th Cir. 2021). Failure by Defendant to identify additional specific statements he wants admitted should result in this Court's denial of any request to admit additional portions of the recordings and messages on the grounds that Defendant has failed to carry his burden of demonstrating how the additional statements would "qualify, explain, or place into context" any specific statement offered by the United States. *United States v. Flentge*, 151 F. App'x 490, 491 (8th Cir. 2005) (per curiam) (unpublished).

### B.    A witness's prior statements to the grand jury may be admitted as substantive evidence

Several of the witnesses in this case testified previously before the grand jury about their interactions with Defendant, and it is anticipated that those witnesses will testify on similar matters at trial. Although the United States does not expect to offer the grand jury testimony as evidence at trial, it may be necessary for the United States to do so. Consequently, the United States provides the following regarding how transcripts of that testimony may be introduced at trial.

According to Federal Rule of Evidence 801(d)(1)(A), a prior statement inconsistent with a witness's trial testimony is not hearsay where the prior statement "was given under penalty of perjury at a trial, hearing, or other proceeding or in a deposition." In applying Rule 801(d)(1)(A), "inconsistency is not limited to diametrically opposed answers but may be found in evasive answers, inability to

recall, silence, or changes of position." *United States v. Matlock*, 109 F.3d 1313, 1319 (8th Cir. 1997). A district court retains "considerable discretion" to determine whether prior statements are inconsistent with trial testimony for purposes of Rule 801(d)(1)(A). *Id.*

Sworn testimony before the grand jury qualifies as a prior statement within the scope of Rule 801(d)(1)(A). *United States v. Wilson*, 806 F.3d 171, 175-76 (8th Cir. 1986). The Eighth Circuit has made clear that grand jury testimony should be admitted under this rule as substantive evidence (not merely as impeachment). *Id.*; *United States v. Mosley*, 555 F.2d 191, 193 (8th Cir. 1977); *see also United States v. Cervantes*, 646 F.3d 1054, 1060 (8th Cir. 2011) ("Rule 801(d)(1)(A) . . . allows the admission of prior inconsistent statements as substantive evidence when they are made under oath."). As Judge Weinstein explains,

> [P]rior inconsistent statements that fulfill the requirements of Rule 801(d)(1)(A) are uttered under circumstances that make them at least as reliable as in-court testimony. Such statements are often made closer in time to the events they recount and may have been made before the exertion of external pressures on the declarant. Thus, they might be more trustworthy than testimony at trial. The rule admits such statements because the dangers against which the rule against hearsay is designed to protect "are largely non-existent."

Vol. 5, Weinstein's Federal Evidence (Second Edition) (2013), § 801.21[1] (citing Advisory Committee Note to Original Rule).

For the same reasons, prior grand jury testimony also would be admissible under Rule 801(d)(1)(B) as substantive evidence "to rebut an express or implied charge that the [witness] recently fabricated it," Fed. R. Evid. 801(d)(1)(B)(i), or "to

rehabilitate the [witness's] credibility . . . when attacked on another ground," Fed. R. Evid. 801(d)(1)(B)(ii); *see also* Weinstein, *supra*, § 801.22[1] (discussing that statements under this subsection are likewise admissible as substantive evidence).

### C.   References to victims' names and exhibits with personal information

At trial, the government anticipates that victims' and witnesses' names will be stated in open court, and that all witnesses will be sworn under their full name. After trial, however, the government requests that this Court redact portions of the trial transcript containing the full names of the five victims (M.B., J.C., C.L., N.A., and J.Z.). Likewise, the government will comply with its duty, pursuant to Local Rule 10(g), "to assure that appropriate redactions" have been made.

Further, some of the records which will be admitted during trial contain information of a sensitive nature, including personal identifiable information, such as residential addresses, email addresses, dates of birth, phone numbers, and social security numbers. The government intends to seek admission of all its exhibits in the regular course of trial. But following the trial, the government will ask this Court for approval to file select exhibits under seal. The government, in its exhibit list, will identify those exhibits it requests be sealed.

**D.     There are no forfeiture matters for this Court to resolve**

The Superseding Indictment does not include a notice of forfeiture. There are

no forfeiture-related matters for this Court to resolve at trial.

Respectfully submitted,

Richard D. Westphal
United States Attorney

By:  /s/ Kyle J. Essley
        Kyle J. Essley
        Laura M. Roan
        Assistant United States Attorneys
        U. S. Courthouse Annex, Suite 286
        110 East Court Avenue
        Des Moines, Iowa 50309
        Tel:  (515) 473-9300
        Fax:  (515) 473-9292
        Email: Kyle.Essley@usdoj.gov
        Email: Laura.Roan@usdoj.gov

CERTIFICATE OF SERVICE

I hereby certify that on April 15, 2024, I
electronically filed the foregoing with the
Clerk of Court using the CM ECF system.  I hereby
certify that a copy of this document was served
on the parties or attorneys of record by:

        U.S. Mail          Fax          Hand Delivery

   X    ECF/Electronic filing          Other means

UNITED STATES ATTORNEY

By: /s/  Alisha Rankin
        Paralegal Specialist

15