IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Criminal No. 4:23-cr-126 |
| | ) | |
| v. | ) | |
| | ) | |
| DARNELL KEITH JONES, | ) | DEFENDANT'S TRIAL BRIEF |
| | ) | |
| Defendant. | ) | |

COMES NOW the defendant, Darnell Jones, through counsel, and submits the following trial brief, pursuant to the Court's trial scheduling order. Most of these likely factual offers from the government have previously been discussed in the parties' respective motions in limine and responses but is supplemented in parts to assist the Court.

The government intends to present a case attempting to prove that Darnell Jones, from at least June of 2018 through at least November of 2019, sex trafficked and attempted to sex traffic alleged Victim #1. Mr. Jones and alleged Victim #1 were in a romantic relationship during the relevant time period. It is anticipated that Victim #1 will testify that at some point during their relationship they began engaging in prostitution, with Mr. Jones acting as her pimp, and that the prostitution involved traveling to various cities and was advertised via online posts in forums associated with escorting and prostitution. Incidents of domestic violence and assault were also reported during their relationship, and it is anticipated that the government will seek to introduce such evidence and attempt to link it to the sex trafficking allegation against Mr. Jones involving alleged Victim #1—that is, that the violence and threats of violence were used to cause her to engage in commercial sex acts.

Mr. Jones later met alleged Minor Victim #1 in 2022 at a gas station where she was working. It is anticipated that alleged Minor Victim #1 will testify that Mr. Jones began in around November of 2022 to suggest she engage in prostitution, with him acting as her pimp. It is anticipated she will testify that they began a romantic relationship, and that Mr. Jones eventually got her to engage in acts of prostitution from around July of 2022 through approximately March of 2023. She will likely testify that she learned from Mr. Jones that alleged Victim #1 had worked as a prostitute for him, and that Mr. Jones proposed that they all work together. There is similarly evidence of incidents of domestic violence and assaults between Mr. Jones and alleged Minor Victim #1, and it is anticipated that the government will seek to introduce such evidence and attempt to link it to the sex trafficking allegation against Mr. Jones involving alleged Minor Victim #1—that is, that the violence and threats of violence were used to cause her to engage in commercial sex acts, or attempt to force her to do so.

It is anticipated that the government will attempt to show that on or about June 5, 2023, to on or about June 8, 2023, Mr. Jones engaged in text message communications with alleged Minor Victim #2, in an effort to convince her to engage in prostitution and to engage in sexual activity (that would constitute a crime due to her age). The government will attempt to show that alleged Minor Victim #2 lived in the same vicinity as alleged Minor Victim #1, and that this is how she first came in contact with Mr. Jones and led to their communicating. The government likely intends to utilize text evidence and related cellular phone and internet communication evidence to show the nature of the communications between Mr. Jones and alleged Minor Victim #2 and argue that Mr. Jones intended to persuade or entice her to engage in either prostitution and/or to engage in illegal sexual activity, while also utilizing this evidence to buttress the

allegations that Mr. Jones either trafficked or attempted to traffic Victim #1 and Minor Victim #1.

The government will seek to present evidence of alleged communications and encounters with uncharged alleged victims from outside of the district. This includes testimony and potentially related evidence from J.Z., regarding an alleged encounter in Chicago in summer of 2019. In sum, J.Z. may testify that Mr. Jones approached her, was kind to her, but ultimately took risqué photographs of her, sexually assaulted her, and wanted to make her a prostitute with him acting as her pimp. The government may also present testimony and potentially related evidence from N.A., regarding her allegedly meeting Mr. Jones on Facebook in late 2021, them meeting in Indiana, him proposing she engage in sex work with him as her pimp, him often speaking about a "pimping lifestyle," that he posted commercial sex acts of her on the internet, and that he ultimately set up three dates with her and she provided most of the money from engaging in prostitution to Mr. Jones.

The government intends to call FBI Supervisory Special Agent James E. Hardie as an expert witness to testify in general about sex trafficking. Special Agent Hardie will purportedly be called to testify as to the "common dynamics that occur in the sex trafficking relationship between a trafficker and a victim." This will include testimony regarding: different types of pimps and their methods of control; that methods are "often a mix of different tactics with different victims or different tactics with the same victim at different times;" that younger women are often targeted for commercial purposes and because, they are more susceptible to recruitment; common means of force to prevent victims from leaving; methods pimps use to target vulnerable victims and control them; reasons why victims may not leave a pimp; non-violent methods of control such as engaging in relationships, promising a future, and promising

to assist the victim; "rules" that victims must follow; "common reactions of victims who have been trafficked" to abuse; how violence toward victims is framed as "discipline" and is meant to instill "loyalty;" trauma-bonding; the meaning of common phrases associated with sex trafficking; and other issues related to the asserted general dynamics between pimps and prostitutes. Special Agent Hardie has not been involved in the case and intends to testify only in general terms about sex trafficking, but the government also asserts he may be questioned about hypothetical questions based on evidence presented in the trial, "or to offer testimony about or by referencing evidence already presented at trial."

    Other anticipated evidence in the case will likely be foundational testimony to introduce records and similar evidentiary materials. This will likely include a large volume of cellular communications, advertisements posted on the internet, and hotel records. Such evidence will likely be attempted to be used by the government to corroborate testimony by the alleged victims in the case. The government will also seek to introduce physical evidence, such as books it will argue are associated with pimping and sex trafficking and that the alleged victims may claim were showed to them by Mr. Jones, lingerie it will allege were utilized for creating advertisements for prostitution, and notations it will argue reflect Mr. Jones' intent to be a "pimp" and profit from women engaging in commercial sexual activity.

                              Respectfully submitted,

                              */s/ Joseph D. Herrold*
                              Joseph D. Herrold, Asst. Federal Defender
                              FEDERAL PUBLIC DEFENDER'S OFFICE
                              400 Locust Street, Suite 340
                              Des Moines, Iowa 50309-2353
                              PHONE: (515) 309-9610
                              FAX: (515) 309-9625
                              E-MAIL: joe_herrold@fd.org
                              ATTORNEY FOR DEFENDANT

CERTIFICATE OF SERVICE

    I hereby certify that on April 15, 2024, I electronically filed this document with the Clerk of Court using the ECF system which will serve it on the appropriate parties.

                                                  */s/ Morgan Conn*, Paralegal